UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CINDI GARDNER AND ANNE RIDEOUT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> FALLON HEALTH & LIFE ASSURANCE COMPANY, INC. AND FALLON COMMUNITY HEALTH PLAN, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 4:19-cv-40148 ) ) ) ) ) ) ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR STEP-ONE NOTICE PURSUANT TO THE FAIR LABOR STANDARDS ACT**

Defendants Fallon Community Health Plan, Inc. ("FCHP") and Fallon Health & Life Assurance Company, Inc. ("FHLAC") (collectively, "Fallon") oppose the Renewed Motion for Step-One Notice that plaintiffs Cindi Gardner and Anne Rideout (jointly, the "Named Plaintiffs") and opt-in plaintiffs Kathleen Ashe and Ronda Carignan (collectively the Named Plaintiffs, Ms. Ashe and Ms. Carignan may be referred to as "Plaintiffs") have filed. Despite conducting pre-certification discovery, Plaintiffs have provided no new material evidence to support their request but rather merely rehash the same arguments that failed to carry the day in their first motion. Plaintiffs cannot avoid a basic truth: the members of Plaintiffs' putative collective are not similarly situated but rather have job duties that vary significantly depending on seniority, team, product line, and level of care. Accordingly, conditional certification in this case would frustrate judicial economy by improperly combining a heterogeneous class of individuals whose claims must be litigated separately, entirely defeating the purpose of collective treatment. The Court should deny this motion, and this case should proceed along the significantly more efficient route of litigating the Named Plaintiffs' claims only.

1

Finally, to the extent this Court believes that notice to the putative collective is warranted, this Court should limit its delivery to a single notice delivered via first-class mail and should revise the content of the notice to reflect the recipients' obligations in this case and include a proportional explanation of Fallon's defense.

## RELEVANT BACKGROUND FACTS

The instant motion is Plaintiffs' second bite at the apple at obtaining Court-sponsored notice to their putative collective. In their first Motion for Step One Notice, filed on March 27, 2020 (the "First Motion"), Plaintiffs alleged, in conclusory fashion, that FCHP's Utilization Management Nurses ("UM Nurses") all performed the same job functions, which Plaintiffs contend is non-exempt work. Dkt. No. 33. However, Plaintiffs' glib allegation ignores the complex, fact-intensive inquiry that will be at the heart of this case: the extent to which Fallon's UM Nurses exercised discretion and judgment in the performance of their job duties and, in particular, the extent to which, as Plaintiffs contend, UM Nurses mechanically applied pre-existing guidelines and instructions to evaluate requested medical services.[1] *See* Plaintiffs' Renewed Motion for Step One Notice (hereinafter "Motion"), p. 13.

In its Opposition to Plaintiffs' First Motion, Fallon utilized the declarations of three current FCHP employees to illustrate the significant variation among UM Nurse job functions based on

---

[1] Plaintiffs' assertion that a nurse's reliance on clinical guidelines precludes the exercise of discretion and judgment is contrary to fact and law. *See, e.g., Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) ("[C]onsult[ing] with manuals or guidelines does not preclude their exercise of discretion and independent judgment"); *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1130–31 (9th Cir. 2007) ("[T]he use of computer software to estimate claims does not eliminate the need for discretion and judgment any more than does resort to other reference works or to the opinions of appraisers and other experts."); *Hines v. Longwood Events, Inc.*, No. 1:08-CV-11653-PBS, 2010 WL 2573194, at *6 (D. Mass. June 23, 2010), aff'd sub nom. *Hines v. State Room, Inc.*, 665 F.3d 235 (1st Cir. 2011) (consulting a manual or guidelines does not preclude the exercise of discretion and judgment). Nonetheless, Fallon references Plaintiffs' argument here solely to frame the issues that will be at stake in this case, which are relevant to the question of whether conditional certification is appropriate.

4817-1654-8558.2

assigned team, seniority, product line, and level of care.[2]  *See* Exhibit A, *Affidavit of Linda Aiello*; Exhibit B, *Affidavit of Christina Meriano*; Exhibit C, *Affidavit of Pamela Cardaci*.  In particular, Fallon established that only UM Nurses assigned to the Utilization Management Team ("UM Team")—one of Fallon's two intradepartmental teams—regularly followed and managed patient care through the course of a patient's treatment.  Exhibit B, ¶¶ 6-7.  Certain UM Nurses, such as Ms. Carignan and Ms. Rideout, served as designated case managers in FCHP's Embedded Care Program.  As participants in this program, their job duties extended well beyond utilization review and included developing and implementing case management programs at a dedicated Physician Hospital Organization ("PHO").  Finally, UM Nurses assigned to certain product lines, such as NaviCare, are expected to consult and communicate with teams of FCHP nurses regarding patient care.  Exhibit C, ¶¶ 3-6; Exhibit B, ¶¶ 9-10.

Fallon likewise established significant variation in the degree to which UM Nurses rely on clinical guidelines to perform their job.  For example, some senior UM Nurses approved treatments not recommended by the clinical guidelines without further review, while other less senior UM Nurses did not.  Depending on product line and level of care, UM Nurses utilize different medical necessity guidelines to perform their jobs, which vary in comprehension.  For example, Medicare guidelines are less encompassing of the complex clinical issues regularly encountered in the elderly Medicare population.  Therefore, UM Nurses assigned to the Medicare product line must rely more heavily on their clinical judgment to bridge the gap between what is authorized pursuant to the clinical guidelines and what is medically appropriate for the member.  Exhibit B, ¶¶ 3-5, 8.

---

[2] Fallon incorporates herein those facts and arguments set forth in its Opposition to Plaintiffs' First Motion.  Dkt. No. 41.

4817-1654-8558.2

Finally, Fallon established that FCHP made two changes to its operations during the relevant time period which impacted the job duties of its UM Nurses. First, in or around the middle of 2018 FCHP ceased its work from home program for UM Nurses, who thereafter had to work out of its corporate headquarters. Second, in or around 2017 FCHP began to assign the majority of its UM Nurses to particular product lines instead of levels of care. This changed the job duties of UM Nurses on the UM Team as it required them to manage each patient's case throughout the duration of their course of care, as opposed to approving discrete requests for services. Exhibit C, ¶ 7-8.

On June 29, 2020, this Court denied Plaintiffs' First Motion without prejudice and ordered an expedited period of discovery, including depositions. Dkt. No. 45. While Defendants produced 2,100 pages of documents, Plaintiffs largely failed to take advantage of this expedited period of discovery and declined to conduct any depositions, despite being expressly authorized to do so by the Court's Order.

Through the instant Motion, Plaintiffs renew their efforts to form a collective of UM Nurses earning less than $100,000 per year. Motion, p. 3.[3] In doing so, Plaintiffs recycle the same arguments from their First Motion, supported by the exact same declarations. The sole addition to the instant Motion is a number of documents produced by Defendants during the limited discovery period, including a job description and procedural policies applicable to Fallon's Utilization Management Department.

---

[3] Plaintiffs' inclusion of a $100,000 salary cap is inconsequential to the putative class as all of FCHP's UM Nurses received salaries below $100,000 per year during the time period relevant to this litigation.

**ARGUMENT**

**I.  PLAINTIFFS FAIL TO ESTABLISH THAT THE PUTATIVE COLLECTIVE IS SIMILARLY SITUATED.**

This Court should deny Plaintiffs' request here because they have failed to establish that the members of the putative collective are "similarly situated" regarding those factual and legal issues relevant to Plaintiffs' claims. While preliminary certification is generally afforded a lenient standard, when a plaintiff has the opportunity to conduct discovery, courts typically apply a heightened standard. *Lankford v. CWL Invs. LLC,* 2014 WL 3956184, at *4 (E.D. Mich. Aug. 13, 2014); *Botero v. Com. Limousine Serv., Inc.*, 2014 WL 1248158, at *3 (D. Mass. March 25, 2014) (denying certification after months of discovery, concluding "the standard is initially `lenient' when based solely on the pleadings but increases as more evidence is presented to the Court"); *Bunyan v. Spectrum Brands*, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008) ("where substantial but not all discovery has taken place," a heightened standard "seems particularly appropriate"). Under this heightened standard, Plaintiffs must show "some progress as a result of the discovery as measured against the original allegations and defenses." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011).[4]

Plaintiffs largely declined to take advantage of the discovery authorized by the Court. Plaintiffs made no effort to take any depositions, including the 30(b)(6) deposition expressly authorized by this Court's Order. Dkt. No. 45. Plaintiffs thus continue to premise their bid for conditional certification almost entirely on the same evidence that they advanced when the Court

---

[4] Plaintiffs' cited authorities regarding the standard for conditional certification do not suggest otherwise. *Boice v. M+W U.S. Inc.*, 2016 WL 11476964, at *3 (N.D.N.Y. Sept. 7, 2016) (distinguishing limited discovery in Boice from discovery involving multiple depositions and hundreds of documents, noting "there may be circumstances that could arise where the depth of discovery warrants the application of [a] more scrutinizing standard"); *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 28-29 (D.D.C. 2016) (declining to apply heightened standard based only on time passed since case filing); *Betancourt v. Maxim Healthcare Servs. Inc.*, 2011 WL 1548964, at *12-13 (N.D. Ill. Apr. 21, 2011) (court declined to authorize discovery prior to conditional certification and hence declined to apply a heightened standard).

5

4817-1654-8558.2

denied their First Motion. *Anderson v. McCarthy, Berges & Wolff, Inc.*, 2015 WL 224936, at *4 (N.D. Ohio Jan. 15, 2015) ("Plaintiff's decision not to take depositions does not exempt her from the higher standard of proof triggered by virtue of the extended joint discovery period").

In particular, Plaintiffs cite to the same boilerplate affidavits that failed to carry the day in their First Motion. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (mere allegations of widespread FLSA violations insufficient to justify collective action). Through these affidavits, Plaintiffs conveniently omit several key details regarding their job duties which distinguish them from the putative collective: namely, that their work was limited to the UM Team, that Ms. Ashe primarily focused on a particular stage of care, that Ms. Rideout's duties were limited to certain product lines, and that Ms. Gardner and Ms. Carignan were assigned exclusively to perform case management duties for separate PHOs. Exhibit C, ¶¶ 3-4. These differences in job duties were significant, as they directly implicated where Plaintiffs worked, the medical necessity guidelines and other resources relied upon to perform their jobs, and ultimately the extent to which Plaintiffs applied their clinical judgment and discretion. *See Burns v. City of Holyoke*, 881 F. Supp. 2d 232, 236 (D. Mass. 2012) (unsupported allegations from two affiants in a single department insufficient to support inference of common practice and policy across various departments). Accordingly, these affidavits cannot satisfy Plaintiffs' evidentiary burden for step-one conditional certification.

Like their boilerplate affidavits, the additional documents that Plaintiffs obtained during limited discovery fail to support their claims. As an initial matter, the UM Nurse job description, which describes the job of a UM Nurse at an extremely high level, does not speak to or negate the reality that UM Nurses performed different functions based on assigned team, product type, member population, and seniority. Motion, Exh. T. Likewise, the policies attached to Plaintiffs'

6

Motion do not negate the significant variation among day-to-day job duties that lies at the heart of the exemption analysis. These policies simply support the undisputed: utilization review is conducted in various contexts. *See id.* at Exhs. B-E, G-N, and P-S. In fact, Fallon's decision to address its product lines and stages of care in separate policies confirms that utilization management work varies based on context. *See, e.g., id.* at Exhs. B (discussing utilization review in the context of inpatient care), D (discussing utilization review in the context of skilled nursing facilities). Finally, the expectation that UM Nurses provide a consistent quality of care does not remotely suggest that they are similarly situated with respect to their job duties. *See id.* at Exh. F.

In comparison to Plaintiffs' dearth of evidence, Fallon has shown that the job duties of its UM Nurses varied in ways that are meaningful to the exemption analysis. The job duties of each UM Nurse vary significantly based on numerous factors, including but not limited to assigned team, product line, and length of employment. Exhibit B, ¶¶ 5, 7. Accordingly, UM Nurses rely on vastly different sources of clinical information, utilize different clinical guidelines, work with different member populations, and focus on different products. *See supra*, pp. 2-4.

For all of these reasons, Plaintiffs are not "similarly situated" to the individuals they would propose to be part of a collective in this action, and their motion should be denied.

## II. CONDITIONAL CERTIFICATION WOULD FRUSTRATE JUDICIAL ECONOMY.

Even assuming *arguendo* that Plaintiffs are able to show that they are "similarly situated" to the putative class, this Court should deny Plaintiffs' request here because granting conditional certification would turn this litigation into a morass. Facilitating notice to a proposed FLSA collective is a discretionary case management tool. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (purpose of notice is to allow for "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity"); *Burns*, 881

F. Supp. 2d at 234 (conditional certification is a "matter of sound case management") (quotation marks and citation omitted).  Courts should deny preliminary certification when, as here, a case can be managed more effectively without it. *Id.*

Certification of the putative collective would needlessly complicate this litigation.  The crux of this case is whether the UM Nurses utilized their professional judgment and/or exercised sufficient discretion and independent judgment in performing their duties to qualify for one or more exemptions from the overtime requirements of the FLSA and analogous state law. This is inherently a fact-intensive, individualized analysis. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009) (affirming denial of certification based on differences among collective members relevant to exemption).

As Fallon has established, substantial variation in job duties among the putative collective members would require the Court to entertain myriad individualized analyses of whether the members were exempt, eviscerating any notion of judicial economy through collective treatment. For example, the Court would have to consider whether each individual UM Nurse performed case management and embedded care management, whether they worked at home and/or in the office, whether they relied upon clinical guidelines to perform their duties, whether the guidelines assigned to their product line were comprehensive, and whether they were permitted to deviate from these clinical guidelines for reasons such as seniority status.  There is no common proof that could address these critical issues on a collective-wide basis but rather each member must answer for their own day-to-day experience.  Such an inefficient path is inimical to the concept of a collective action.

Indeed, recent cases have shown the inefficient trajectory of a case burdened by the inappropriate use of collective certification.  In January 2020, the Second Circuit case decided a

case based on analogous factual circumstances. In that case, the court certified a collective of utilization review employees, only to then hold that the named plaintiff was an exempt professional as a matter of law. *See Isett v. Aetna Life Ins. Co.*, 947 F.3d 122 (2d Cir. 2020). The opt-ins, whose exempt status the court had no need to reach, were dismissed without prejudice and left to pursue their own individual cases, if they chose. *Id.* Collective treatment afforded no efficiencies for the litigation; to the contrary, the Court's decision on the merits of the Named Plaintiffs' claims left the collective of former opt-ins in judicial limbo. *See also Modeski v. Summit Retail Solutions, Inc.*, 2020 WL 4559939 (D. Mass. July 2, 2020) (likewise dismissing named plaintiff as an exempt professional, leaving former opt-ins to pursue their own case).

The same concerns are present here. Even at this early stage of litigation, it is evident that Plaintiffs' claims will fail on their merits, rendering any efforts to gather opt-in plaintiffs moot. When the Second Circuit granted summary judgment in favor of the employer in *Isett,* it rejected all arguments and both cases that Plaintiffs now cite to in support of their claims here. *See Isett,* 947 F.3d at 137-8 (distinguishing the unpublished case *Clark v. Centene Company of Texas, L.P.* as the vast majority of the collective in *Clark* were not registered nurses); *id.* at 135 (rejecting *Rego v. Liberty Mutual Managed Care, LLC* as misstating exemption law). Consequently, certifying a collective in this matter, even if only conditionally, will not promote judicial economy and this Court should deny Plaintiffs' motion.

### III. AN ALTERNATIVE TO CONDITIONAL CERTIFICATION AT THIS STAGE OF THE CASE EXISTS.

Even if Plaintiffs had made an appropriate showing that conditional certification were warranted at this stage, which they have not, an alternative approach exists that would allow the case to proceed in an expeditious manner while preserving the rights of any putative opt-in plaintiffs. Fallon would be willing to have the Court defer ruling on Plaintiffs' motion for

9

conditional certification and instead enter a new tolling order from the date of its ruling on Plaintiffs' renewed motion until such time as discovery and summary judgment on the Named Plaintiffs' individual claims are complete (by its terms, the prior tolling order that this Court entered expired as of the date that Fallon filed its Opposition to Plaintiffs' First Motion). Dkt. No. 38. If the Court were to allow Fallon's anticipated motion for summary judgment on the Named Plaintiffs' claims, it would not need to take the collective action issue further. If the Court were to deny Fallon's anticipated motion, it could then revisit the issue of collective certification (and then on a more fully-developed factual record). In the interim, no harm will occur to potential opt-in plaintiffs; they would be in the same position as if the Court ruled on Plaintiffs' second conditional certification motion now. Consequently, even if the Court otherwise were inclined to permit conditional certification, it should defer that ruling and instead extend its existing statute of limitations tolling order to allow the parties to litigate Plaintiffs' individual claims, at least through summary judgment.

### IV. EVEN ASSUMING CONDITIONAL CERTIFICATION IS APPROPRIATE, PLAINTIFFS' PROPOSED NOTICE IS IMPROPER.

Even assuming *arguendo* that certification of the collective is appropriate at this stage, the proposed notice advanced by Plaintiffs is improper for several reasons. Putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche*, 493 U.S. at 170. As discussed below, the proposed notice should be delivered to recipients in a singular notice via first-class mail and revised to reflect information regarding the recipients' litigation obligations and proportional language regarding Fallon's defense.

4817-1654-8558.2

A. <u>Any Notice Should Consist of a Single, Mailed Notice Form.</u>

The burden is on Plaintiffs to show that a single mailed notice would be ineffective. *Walsh v. Gilbert Enters., Inc.*, No. 15-472-WES, 2019 WL 1206885, at *8 (D.R.I. Mar. 14, 2019) ("Notice shall be issued by First Class mail only, unless Plaintiff demonstrates to the Court that the contact information provided by Defendant is inadequate to reach potential plaintiffs."); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) ("first-class mail is an adequate means to disseminate the Notice"). Likewise, Plaintiffs must establish good cause for issuing a reminder notice. *Davine v. Golub Corp.*, No. CV 14-30136-MGM, 2015 WL 12966278, at *1 (D. Mass. June 11, 2015) (denying plaintiffs' requests for authorization to send reminder postcard). Plaintiffs have provided no reason why these reminders would be necessary. *Brayman v. KeyPoint Gov't Sols., Inc.*, No. 18-CV-0550-WJM-NRN, 2018 WL 5776373, at *8 (D. Colo. Nov. 1, 2018), on reconsideration in part, No. 18-CV-0550-WJM-NRN, 2019 WL 3714773 (D. Colo. Aug. 7, 2019) ("Plaintiff has not established good cause to show why a reminder notice is necessary here.")

B. <u>The Proposed Notice Lacks Information Regarding the Recipients' Obligations.</u>

In furtherance of judicial economy and transparency, the notice should be revised to include language regarding the recipients' obligations as parties to this litigation. *See Boice v. M+W U.S., Inc.*, 2016 WL 11476964, at *9 (N.D.N.Y. Sept. 7, 2016) ("alerting potential plaintiffs . . . that they may be required to travel to the [forum] for depositions, trial, or other obligations more properly reflects the potential responsibilities of opting in as a plaintiff in this action."). Including such language will ensure that recipients are fully informed of their responsibilities and will reduce the need for discovery motion practice and potential motions to dismiss those individuals who fail to meet their obligations. Accordingly, the notice should be revised to include the following language:

> "Individuals who join this action will assume the role of parties to the litigation, which comes with obligations and risks. If you join the case, you may be asked to provide relevant documents, respond to written questions, and provide testimony under oath at deposition in Worcester, Massachusetts. You may also be required to attend and testify at the trial of this matter, which will also occur in Worcester. In addition, you will be required to preserve and produce evidence including, but not limited to, your social media accounts for the relevant time period, potentially at your own expense."

C. <u>The Proposed Notice Lacks Proportional Language Regarding Fallon's Position.</u>

Courts require that a notice be proportional and reflect a defendant's position. *Aguilar v. Mgmt. & Training Corp.*, 2017 WL 4277139, at *8 (D.N.M. Jan. 27, 2017) (allowing plaintiffs two sentences to explain their lawsuit and defendant two sentences to communicate its denials); Martin v. Sprint/united Mgmt. Co., 2016 WL 30334, at *17 (S.D.N.Y. Jan. 4, 2016) ("[C]ourts frequently direct plaintiffs to include a more expansive account of defendants' denials, as well as the status of the action, in the introduction section of a collective action notice").

Plaintiffs' proposed notice is unequal, as it devotes three sentences to Plaintiffs' position and one brief sentence to Fallon's defense. Accordingly, the notice should be revised to incorporate the following language, which will grant Fallon a proportional opportunity to present its side of the case:

> "Defendants deny that they owe the plaintiffs any additional compensation. Defendants assert that, as utilization review clinicians, plaintiffs were required to exercise their judgment as clinical professionals. As such, they are properly exempt based on the professional and/or administrative employee exemptions and were properly paid a salary, rather than on an hourly basis."

## **CONCLUSION**

For the reasons set forth above, this Court should deny Plaintiffs' motion for step-one notice in its entirety. In the alternative, this Court should defer ruling on the motion and instead permit the parties to litigate the individual claims of Gardner and Rideout (while extending its statute of limitations tolling order for putative opt-in plaintiffs), or at a minimum revise the Notice of Collective Action as provided in this Opposition.

                                            FALLON HEALTH & LIFE ASSURANCE
                                            COMPANY, INC. AND FALLON
                                            COMMUNITY HEALTH PLAN, INC.

                                            By Their Attorneys,

                                            */s/ Chelsie A. Vokes*
                                            Robert G. Young (BBO #650541)
                                            Chelsie A. Vokes (BBO #699010)
                                            BOWDITCH & DEWEY, LLP
                                            311 Main Street
                                            P.O. Box 15156
                                            Worcester, MA  01615-0156
                                            Telephone:  508-926-3394
                                            Facsimile:  508-929-3031
                                            E-mail:  ryoung@bowditch.com
                                            E-mail:  cvokes@bowditch.com

Dated: October 13, 2020

## CERTIFICATE OF SERVICE

I, Chelsie A. Vokes, hereby certify that this document was served on counsel for Plaintiffs via electronic mail on this 13th day of October 2020.

                                            */s/ Chelsie A. Vokes*
                                            Chelsie A. Vokes