**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **CINDI GARDNER and ANNE RIDEOUT,** individually and on behalf of all others similarly situated, | ) ) ) ) ) | **CIVIL ACTION** **NO.  4:19-40148-TSH** |
| **Plaintiffs,** | ) ) |  |
| v. | ) ) |  |
| **FALLON HEALTH & LIFE INSURANCE COMPANY, INC., and FALLON COMMUNITY HEALTH PLAN, INC.,** | ) ) ) ) |  |
| **Defendants.** | ) ) |  |

**ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION (Docket No. 55) AND EQUITABLE TOLLING (Docket No. 70)**

**September 29, 2021**

**HILLMAN, D.J.**

Plaintiffs Cindi Gardner and Anne Rideout bring this action against defendants Fallon Health & Life Assurance Company, Inc. and Fallon Community Health Plan, Inc. under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, for unpaid overtime wages.  The plaintiffs seek conditional certification of a collective action and permission to send notice of that action to current and former employees of the defendants (Docket No. 55), as well as an order tolling the statute of limitations for potential opt-in plaintiffs (Docket No. 70).  For the following reasons, the Court ***grants*** the motion for conditional certification and ***denies without prejudice*** the motion for equitable tolling.

**Background**

The following facts, taken from the complaint and the exhibits attached to the motion for conditional certification, are presumed true for purposes of this order. *See Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 180 n.1 (D. Mass. 2016). The defendants, who operate under the name "Fallon Health," are Massachusetts-based health insurance providers. (Docket No. 1 at ¶ 1). They employed the plaintiffs and other employees whose primary job was to review health insurance benefit requests submitted by health care providers. (*Id.* at ¶ 8). The defendants classified these "utilization review" employees, whom they paid a salary, as exempt from the overtime requirements of the FLSA. (*Id.* at ¶ 5, 50-51). In performing utilization review work, these employees had the authority to approve health insurance benefit requests that matched predetermined criteria, but they lacked the authority to deny health insurance benefit requests that did not match the predetermined criteria. (*Id.* at ¶ 32-33). The defendants referred to "utilization review" employees in a variety of ways;[1] most commonly, though, as UM Nurses. (Docket No. 41-1 at 3). One of the defendants' internal documents described the position as consisting of pre-service, concurrent, and post-service review of ambulatory and hospital services using valid clinical criteria. (Docket No. 57-2 at 29). Although the position required a nursing degree, the position did not involve the provision of traditional nursing care. (Docket No. 33-1 at 19, 21). UM Nurses regularly worked over forty hours per week. (Docket No. 1 at ¶ 6).

The plaintiffs, after filing their complaint in November 2019, moved for conditional certification of a collective action on March 27, 2020. The named plaintiffs and two opt-in plaintiffs each submitted a declaration in support of certification. (Docket No. 33-1 at 20-31).

---

[1] Other titles covering the same function, according to the plaintiffs, were RN Nurse Reviewer, Nurse Reviewer, Utilization Management RN, Utilization Management Nurse, UM RN, Utilization Review Nurse, Inpatient Utilization Nurse Care Manager, and Utilization Nurse Care Manager. (Docket No. 33-1 at 21, 24, 27, 20).

Each plaintiff stated that her job consisted of reviewing clinical information to determine whether the information met established criteria for approving insurance benefit requests. (*Id.* at 21, 24, 27, 30). Each plaintiff also stated that the defendants' guidelines for approving coverage were "comprehensive and detailed a course of action for nearly every contingency" encountered. (*Id.*). Moreover, each plaintiff performed this work either from home or in a call-center setting, and each plaintiff regularly worked more than forty hours per week. (*Id.* at 22, 25, 28, 31).

In opposing the plaintiffs' motion, a manager in the defendants' "Utilization Management Department" averred that "[s]everal variables, including the team, product line, member population, and level of care uniquely define the day-to-day job duties of each UM Nurse," and that some guidelines relied upon by UM Nurses are less comprehensive than others. (Docket No. 41-2 at 3-4). A director in the department similarly averred that the job duties of UM Nurses vary based on several factors, including their assigned team, product line, stage of care, and member population. (Docket No. 41-3 at 2). Finally, a vice president of clinical operations averred that the defendants employ approximately ten UM Nurses at any point in time. (Docket No. 41-1 at 4).

After a hearing, the Court denied the plaintiffs' motion without prejudice and allowed a short period of expedited discovery. (Docket No. 45). On September 25, 2020, the plaintiffs renewed their motion for conditional certification, attaching as exhibits several of the defendants' internal programs and policies relevant to UM Nurses. (Docket No. 55 & 57). In this motion, which is now before the Court, the plaintiffs request that the Court conditionally certify the following collective action group:

> All individuals employed by Fallon as UM Nurses in the last three years who were paid on a salary basis, earned less than $100,000 per year, and were classified as exempt from the FLSA.

(Docket No. 56 at 3). The documents identified by the plaintiffs corroborate the plaintiffs' assertions in their complaint that UM Nurses evaluate requests using set criteria, that UM Nurses can approve requests when the criteria are met, and that UM Nurses refer the requests to a medical director when the criteria are not met. (Docket No. 57-2 at 8). The documents also state that the defendants use nationally recognized review criteria for making decisions, that the criteria are available to "all review staff," and that to "ensure quality and consistency of performance," the defendants conduct reliability evaluations for all clinical review staff annually; when a staff member fails to meet and maintain an 80% score for accuracy, an individually tailored action plan is put into place to correct the deficiency. (*Id.* at 17-18). The defendants, moreover, have numerous policies for UM Nurses to follow in various contexts, such as a policy for identifying the need to provide services not routinely covered and a policy to evaluate requests for elective admission to skilled nursing facilities. (Docket Nos. 57-3 & 57-12). Across many contexts, such as inpatient authorizations, skilled nursing facilities, long term acute care, and acute rehabilitation, the policies reiterate that when a UM Nurse is unable to approve a request based on criteria and the clinical information received, the case is sent to a medical director for determination. (Docket No. 57-14 at 7-8, 11).

## Discussion

*1. Certification*

For each hour per week that a non-exempt employee works in excess of forty hours per week, the FLSA requires that the employee be paid at a rate of not less than one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207(a)(1); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). To promote the efficient adjudication of similar claims, the FLSA allows employees to enforce their rights in a collective action. *See Cunha*, 221 F. Supp.

3d at 181. "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Id.* (quotations omitted). Courts have developed a certification process to facilitate these actions. *See Dyse v. HealthAll Consulting*, 433 F. Supp. 3d 35, 38 (D. Mass. 2020). The certification process employed by most courts has two steps. *See Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 161 (D. Mass. 2019); *Cunha*, 221 F. Supp. 3d at 181 (noting that the First Circuit has not addressed the issue). First, "the court makes an initial determination of whether the potential class should receive notice of the pending action." *Trezvant v. Fid. Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 42 (D. Mass. 2006). Second, "after discovery is complete, the court makes a final 'similarly situated' determination." *Id.*

At the first step, a court need only make a preliminary finding that the plaintiffs are similarly situated. *Melendez Cintron v. Hershey P. R., Inc.*, 363 F. Supp. 2d 10, 16 (D. P.R. 2005). This determination is made "using a fairly lenient standard, which typically results in conditional certification of the representative class." *Trezvant*, 434 F. Supp. 2d at 43. Plaintiffs must put forth only a *modest factual showing* or assert substantial allegations that "the putative class members were together the victims of a single decision, policy, or plan that violated the law." *Id.* (quoting *Thiessen v. Gen. Elec. Capital*, 267 F.3d 1095, 1102 (10th Cir. 2001)). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 420 (D. Mass. 2018) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y 2007). "After discovery is complete, the party opposing the conditional class may file a motion for decertification." *See Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).

Here, at step one, the plaintiffs have satisfied the lenient standard. *See Cunha*, 221 F. Supp. 3d at 182. They assert that the defendants classified UM Nurses as salaried employees exempt from overtime pay under the FLSA, s*ee Kane*, 138 F. Supp. 2d at 215 (finding defendants' policy of treating a discrete class of employees as exempt from FLSA overtime requirements sufficient for "similarly situated" determination), and their declarations indicate that they regularly worked more than forty hours per week.

Furthermore, the plaintiffs have shown that UM Nurses share common job qualifications, skills, and duties. *See Cunha*, 221 F. Supp. 3d at 182. The defendants, in their internal program and policy documents, classified "utilization review" employees uniformly as UM Nurses and provided one general job description for UM Nurses in their "Utilization and Care Services Program." (Docket No. 57-2 at 29). The fact that the defendants have reduced the job duties of all UM Nurses to one description is "sufficient to satisfy the minimal showing necessary to justify issuing notice," *Cunha*, 221 F. Supp. 3d at 182, even where some variation across positions exists, *see Trezvant*, 434 F. Supp. 2d at 48.

The defendants' policies, moreover, suggest that all UM Nurses primarily reviewed requests for insurance coverage and payment by comparing the clinical information provided to them against predetermined criteria. (Docket No. 57-20 at 3). According to the policies, when the clinical information matched predetermined criteria, the UM Nurses could approve the coverage. (Docket No. 57-14 at 3). When the criteria did not match, the UM Nurses had to refer the request to a medical director. (*Id.* at 4). Contrary to the defendants' contention, the documents do not indicate that reliance on predetermined criteria varied by seniority or setting. While the defendants argue that the predetermined criteria did not cover every request across every product area or level of care, all four plaintiffs declared that the criteria they used were comprehensive and covered

"nearly every contingency," even though, as the defendants note, the plaintiffs themselves worked in different areas. (Docket No. 33-1 at 21, 24, 27, 30; Docket No. 41-3 at 3).

Several of the defendants' policies also applied across product lines. (*See, e.g.*, Docket No. 57-4 at 3; Docket No. 57-6 at 3; Docket No. 57-17 at 2). Indeed, the defendants' efforts to achieve consistency in how UM Nurses applied approval criteria across the board lends support to the conclusion that the function and duties of each UM Nurse was comparable. (Docket No. 57-2 at 18). While the defendants point to the fact that some UM Nurses worked from home instead of in an office, the plaintiffs' declarations indicate that their jobs remained the same regardless of location. (Docket No. 33-1 at 21, 24, 27, 30).

Finally, several courts have allowed conditional certification based on similar circumstances. *See, e.g.*, *Drake v. Tufts Associated Health Maint. Org., Inc.*, 2021 WL 2767308, at *5 (D. Mass. Feb. 12, 2021) (conditionally certifying collective of utilization review nurses); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 432 (D. N.M. 2018) (conditionally certifying collective of health care employees whose duties included care utilization); *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018) (conditionally certifying collective of employees whose job titles consisted of care utilization). The differences identified by the defendants, therefore, do not defeat conditional certification at this stage. *See Romero*, 368 F. Supp. 3d at 162. Accordingly, the Court conditionally certifies the collective action group proposed by the plaintiffs.

## 2. Notice

The plaintiffs also ask the Court to approve their proposed notice program. The plaintiffs have attached a proposed Notice and Consent form to their motion. (Docket No. 57-22). They also seek a sixty-three-day opt-in period from the date the notice is mailed and an order that (1)

requires the defendants to disclose the names, job titles, employee ID numbers, dates of employment, last known mailing addresses, last known personal e-mail addresses, mobile telephone numbers, and work locations for all members of the collective and (2) authorizes the plaintiffs to send the initial notice by mail, e-mail, and text message to the collective members and a reminder notice (thirty days after the initial notice) also by mail, e-mail, and text message. (Docket No. 56 at 14). The defendants object on two grounds.

First, the defendants argue that the notice should consist only of a single, mailed form. "In an FLSA collective action, the Court has discretion in helping to facilitate notice to potential group members." *Romero*, 368 F.Supp.3d at 163. The Court will allow the plaintiffs to send the initial notice by mail, e-mail, and text message, as well as one reminder notice by mail, e-mail, and text message thirty days following the issuance of the initial notice. Courts routinely allow notice by e-mail, *see, e.g.*, *Romero*, 368 F. Supp. 3d at 163; *Torrezani v. VIP Auto Detailing, Inc.*, 2017 WL 2951618, at *2 (D. Mass. May 31, 2017), and many courts have allowed notice by text message, *see e.g.*, *Camp v. Bimbo Bakeries USA, Inc.*, 2019 WL 440567, at *5 (D. N.H. Feb. 4, 2019); *Douglas v. Anthem Prod., LLC*, 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019); *Lindsay v. Cutters Wireline Serv., Inc.*, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D. N.M. 2017). Courts also regularly allow plaintiffs to send a reminder notice. *See, e.g.*, *Noll v. Flowers Food, Inc.*, 2017 WL 11516828, at *2 (D. Mass. Jan. 20, 2017); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1198-99 (D. Minn. 2015). These channels will help ensure that potential opt-in plaintiffs receive notice of the collective action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Second, the defendants argue that the notice lacks information regarding the recipients' obligations and proportional language regarding the defendants' position. "The specific content

of the notice is a matter entrusted to the court's discretion." *Roy v. FedEx Ground Package System, Inc.*, 353 F. Supp. 3d 43, 74 (D. Mass. 2018). As for the recipients' obligations, the defendants propose the following addition:

> Individuals who join this action will assume the role of parties to the litigation, which comes with obligations and risks. If you join the case, you may be asked to provide relevant documents, respond to written questions, and provide testimony under oath at deposition in Worcester, Massachusetts. You may also be required to attend and testify at the trial of this matter, which will also occur in Worcester. In addition, you will be required to preserve and produce evidence including, but not limited to, your social media accounts for the relevant time period, potentially at your own expense.

(Docket No. 59 at 12). While it is true that becoming a party to the case will impose obligations on the recipient, *see Boice v. M+W U.S., Inc.*, 2016 WL 11476964, at *9 (N.D.N.Y Sept. 7, 2016), the defendants do not identify any specific "risks" in their briefing, nor do they explain why the parties' social media accounts should be singled out. Accordingly, the Court approves the addition only with the following edits, also taking the COVID-19 pandemic into account:

> Individuals who join this action will assume the role of parties to the litigation, which comes with obligations. If you join the case, you may be asked to provide relevant documents, respond to written questions, and provide testimony under oath at a deposition, which may take place remotely or in Worcester, Massachusetts. You may also be required to attend and testify at the trial in this matter, which also may take place remotely or in Worcester. In addition, you will be required to preserve and produce evidence, potentially at your own expense.

As for proportional language regarding the defendants' position, the defendants request that the notice be revised to include the following:

> Defendants deny that they owe the plaintiffs any additional compensation. Defendants assert that, as utilization review clinicians, plaintiffs were required to exercise their judgment as clinical professionals. As such, they are properly exempt based on the professional and/or administrative employee exemptions and were properly paid a salary, rather than on an hourly basis.

(Docket No. 59 at 12). The plaintiffs' proposed notice describes the plaintiffs' position in one sentence, as claiming that the defendants "violated federal and state overtime wage laws by not

paying 'Utilization Review Employees' overtime when they worked more than 40 hours per week," and the defendants' position in one sentence as, "The Company denies the allegations in the lawsuit." (Docket No. 57-22). The Court declines to add the defendants' proposed addition. The Court, however, will allow the proposed notice to be modified (if the defendants so choose) to state, "The Company denies the allegations in the lawsuit and denies that the plaintiffs are entitled to overtime pay," to proportionately explain the defendants' position. *See Drake*, 2021 WL 2767308, at *5.

Finally, the language of the notice describing the collective ("Utilization Review Employees") should be edited to mirror the language submitted to and approved by the Court in this motion ("UM Nurses" and "earned less than $100,000 per year"). The plaintiffs' proposed form otherwise is approved.

The plaintiffs' proposed plan also is approved (as consistent with this order). The opt-in period will last sixty-three days from the date notice is issued, the defendants are required to disclose the information requested by the plaintiffs within seven days of issuance of this order, and the plaintiffs are required to send out the initial notice within twenty-one days of receiving the requested information from the defendants.

### 3. *Equitable Tolling*

The plaintiffs move for an order tolling the statute of limitations for potential opt-in plaintiffs. (Docket No. 70). They request that the limitations period for such plaintiffs be tolled from the date the plaintiffs filed their first motion for conditional certification to the date step-one notice is issued. The defendants oppose the motion, arguing that the order would constitute an impermissible advisory opinion and, in addition, that the plaintiffs have failed to show that equitable tolling is appropriate. (Docket No. 71).

"The equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own." *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir. 2010). For equitable tolling to apply, a litigant generally must demonstrate that (1) he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in way. *Id.* The issue of equitable tolling often arises in FLSA cases because the filing of a collective action does not toll the limitations period for opt-in plaintiffs until the opt-in plaintiffs actually opt-in. *See* 29 U.S.C. § 256(b). Consequently, opt-in plaintiffs' claims may become barred by the time a court rules on a motion for conditional certification. *See Pruess v. Presbyterian Health Plan, Inc.*, 2020 WL 6544243, at \*9 (D. N.M. Nov. 6, 2020). *But see O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 182 (D. Mass. 2008) (individuals can independently join an FLSA suit before notice is sent).

The delay between the filing of a motion for conditional certification and the issuance of a decision on that motion may constitute an "extraordinary circumstance" for purposes of equitable tolling. *See Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at \*2 (E.D.N.Y. Mar. 8, 2011); *Hernandez v. Caviness Packing Co. Inc.*, 2008 WL 11183755, at \*2 (N.D. Tex. June 2, 2008). "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

Courts are split on whether equitable tolling properly may be addressed at the conditional certification stage, however. While some courts have done so, *see, e.g.*, *Pruess*, 2020 WL 6544243, at \*9; *Pineda v. Skinner Services, Inc.*, 2020 WL 5775160, at \*10-11 (D. Mass. Sept. 28, 2020); *McGlone*, 867 F. Supp. 2d at 445; *Hernandez*, 2008 WL 11183755, at \*2, other courts

11

have concluded that, where the opt-in plaintiffs whose claims may require tolling are not yet parties to the case, consideration of the issue is premature.  *See, e.g.*, *Bah v. Enter. Rent-A-Car Co. of Boston, LLC*, 2021 WL 3932274, at *3-4 (D. Mass. Sept. 2, 2021); *Gonpo v. Sonam's Stonewalls & Art LLC*, 2018 WL 1725695, at *8 (D. Mass. Apr. 9, 2018); *Roberts v. TJX Cos., Inc.*, 2017 WL 1217114, at *8 (D. Mass Mar. 31, 2017); *Tidd v. Adecco USA, Inc.*, 2010 WL 996769, at *3 (D. Mass. Mar. 16, 2010).  The Court finds the latter position more prudent.  Accordingly, the Court will deny the plaintiffs' motion without prejudice, to be renewed as appropriate.

## Conclusion

For the reasons stated, the plaintiffs' motion for conditional certification and step-one notice (Docket No. 55) is ***granted***, and the plaintiffs' motion for equitable tolling (Docket No. 70) is ***denied without prejudice***.


**SO ORDERED**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
